IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| GREGORY SPIKES | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| v. | : | Civil Action No. |
| | : | 5:08-CV-131(HL) |
| JONATHAN BUTTS AND | : | |
| LIEUTENANT PHILIP LOCKETT, | : | |
| Defendants. | : | |

# ORDER

Before the Court is Defendant Lt. Philip Lockett's ("Lt. Lockett") Motion for Summary Judgment (Doc. 32). For the following reasons, the motion is granted.

## I. PLAINTIFF'S FAILURE TO RESPOND

Plaintiff Gregory Spikes ("Spikes") did not file a response to Lt. Lockett's motion for summary judgment. Based on this failure, the Court could find the motion unopposed and grant summary judgment in favor of Lt. Lockett. In an exercise of fairness, however, the Court has reviewed the evidentiary record to determine whether there are any genuine issues of material fact relating to Lt. Lockett.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In his complaint, Spikes claims he was attacked by Defendant Jonathan Butts ("Butts") and Lt. Lockett, correctional officers at Bostick State Prison ("Bostick").

Spikes was a prisoner at Bostick. As part of his prison duties, he worked in the prison kitchen. (Spikes Dep. at 29). Butts was Spikes' supervisor. (Id. at 33-34). In

his deposition, Spikes testified that on February 12, 2008, he reported for kitchen work. (Id. at 55). Spikes told Butts that he did not feel well and was in a lot of pain. (Id.). In response, Butts started "cussing [Spikes] out, telling [him], well, you can go back to the dorm . . . ." (Id.). Reacting to Butts' remarks, Spikes turned around and began to leave. (Id. at 56). Butts then grabbed Spikes, pushed him down, and hit him in the mouth. (Id.).

Butts called security officers for assistance (Id. at 56-57). Security officers arrived and handcuffed Spikes. (Id. at 57). A security officer also began videotaping Spikes. (Id. at 57). Lt. Lockett arrived on the scene after Spikes had been handcuffed (Lockett Dep. at 13).

The officers took Spikes to the infirmary. (Spikes Dep. at 61; Lockett Dep. At 30). Lt. Lockett remained behind to question witnesses about what happened between Spikes and Butts. (Lockett Dep. At 30).

### A. Spikes' Version of the Events After Arriving at the Infirmary

While in the infirmary, Spikes testified he was treated by a nurse who told him he would be alright. (Spikes Dep. at 62). She placed a band-aid on him, but did not clean the blood off of him. (Id. at 64). He said that his mouth was bleeding and that the blood got all over his mouth and clothes. (Id.).

Spikes testified that after he was treated at the infirmary, Lt. Lockett took him to the security office. (Id. at 64-65). Lt. Lockett closed the door to the security office. (Id. at 65). Lt. Lockett proceeded to pick up Spikes and throw him down. (Id.). Spikes' head

2

hit the concrete floor and his forehead started bleeding. (Id.). Spikes' testimony was that Lt. Lockett also put his knee in the back of Spikes' head. (Id.). Spikes incurred injuries on the right side of his forehead. (Id. at 68).

Following the attack, security officers arrived to take Spikes to an administrative segregation cell. (Id. at 66). Spikes was stripped searched in the cell. (Id.).

**B. The Video's Version of the Events After Spikes Arrived at the Infirmary**

In direct contrast to Spikes' version of the events is the events shown on video.[1] The video was made as part of Bostick's normal practices and procedures to document events following an inmate's injury caused by an altercation between the inmate and another inmate or a staff member. (Cook Aff. ¶ 3). There is no evidence showing the video was tampered with or altered. Spikes does not contend that the video does not depict the events differently from what happened.

The video begins with Spikes waiting to be treated at the infirmary. Blood can be seen flowing down his nose. There is no blood seen on his white clothing. Nurses cleaned his eye brow area and his lip. A nurse took his temperature and another asked him questions about his contact with persons potentially having sexually transmitted infections. He was in the infirmary for about twelve minutes.

Spikes' medical record contains a report incident describing Spikes' injuries

---

[1] The video was copied to a compact disc and was attached as an exhibit to the affidavit of Captain John Cook (Doc. 38). The affidavit was filed in support of Lt. Lockett's motion for summary judgment.

caused by Butts' alleged attack.  It describes an injury to his right eye brow and lower lip.  (Lockett's Statement of Material Facts Ex. 5, Doc. 33-8).

Following his treatment, the video shows that Spikes was led from the infirmary to an administrative segregation cell by two officials.  A third person carried the video camera and filmed Spikes.  The walk from the infirmary to the segregation cell lasted about four minutes.  Once Spikes was in the cell, but before it was locked, the officers stripped searched Spikes.  After the search, the officers left the cell, locked it, and told Spikes to get dressed.

At no point during the video was there a pause or a skip in events.  The moments flowed continuously.  According to the video, Spikes was never led into the security office by Lt. Lockett.  The video does not show Lt. Lockett in Spikes' presence or attacking Spikes.

### C. Procedural History

Spikes brought a 42 U.S.C. § 1983 action against Lt. Lockett and Butts claiming they used excessive force against him in violation of the Eighth Amendment (Doc. 1). Specifically, Spikes claims that Lt. Lockett used excessive force when he attacked Spikes in the security office and that Butts used excessive force when he threw Spikes to the floor in response to Spikes explaining that he did not feel well.

The Court denied the Lt. Lockett's and Butts' motions to dismiss (Doc. 15). Before the Court is Lt. Lockett's motion for summary judgment.  He seeks judgment as a matter of law on Spikes' claims against him and asserts he is entitled to qualified

immunity. Butts has not filed a motion for summary judgment.

### III. ANALYSIS

#### A. The Summary Judgment Standard

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a defendant's motion for summary judgment, the court takes the facts in the light most favorable to the plaintiff. Stanley v. City of Dalton, 219 F.3d 1280, 1287 (11th Cir. 2000). The court may not, however, make credibility determinations or weigh the evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

The initial burden lies on the movant to demonstrate that the nonmovant lacks evidence to support an essential element of its claim. Lowe v. Aldridge, 958 F.2d 1565, 1569 (11th Cir. 1992). The movant must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

If the moving party meets his burden, then the burden shifts to the nonmovant, who must come forward with some evidence that would allow a jury to find in his favor, even if the parties dispute that evidence. Lowe, 958 F.2d at 1569. "When opposing

parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1176 (2007) (citation and quotations omitted). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id.

In this case, Spikes' version of the events is so contradictory to the events depicted in the video. Therefore, the Court will not adopt his version of the events and instead will adopt the version of the events described in the video. Finding no genuine issue for trial, summary judgment is granted to Lt. Lockett.

### B. No Genuine Issue for Trial

It is clear from the video that Lt. Lockett did not violate the Eighth Amendment.

The use of excessive force violates the Eighth Amendment. Skritch v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002). Logically, however, there cannot be an Eighth Amendment violation if no force was applied.

Spikes' testimony is that after he was treated at the infirmary, he was attacked by Lt. Lockett in the security office. While the testimony states an Eighth Amendment claim, it is completely contradicted by the video evidence. According to the video, Spikes was taken from the infirmary directly to an administrative segregation cell. He was never taken to the security office. Lt. Lockett did not appear on the video.

Further, during the walk from the infirmary to the segregation cell no force was

6

used against Spikes. To be sure, Spikes was handcuffed and escorted by two officials, but that alone does not show an Eighth Amendment violation. "Restraints on an inmate do not violate the [Eighth] amendment unless they are 'totally without penological justification,' 'grossly disproportionate,' or 'involve the unnecessary and wanton infliction of pain." Smith v. Coughlin, 748 F.2d 783, 787 (2d Cir. 1984) (quoting Rhodes v. Chapman, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L.Ed.2d 59 (1980)). Spikes has not alleged that the use of handcuffs was unnecessary, disproportionate, or without justification.

Moreover, Spikes' testimony regarding the injuries he sustained from Lt. Lockett's attack contradict the video evidence. Spikes testified that following the attack his forehead was bleeding and prior to the attack he only had a mouth injury. The video and the medical report , however, show that he had a forehead injury at the time he was treated in the infirmary. It is clear that Spikes received his forehead injury prior to treatment at the infirmary and not, as he testified, after he left the infirmary and was attacked by Lt. Lockett.

In sum, the record evidence shows that Lt. Lockett was not in Spikes' presence following treatment at the infirmary and that Lt. Lockett never attacked Spikes. Spikes' testimony is so contradictory to the record that no reasonable jury could believe him. Finding no genuine issue of fact as to whether Lt. Lockett used excessive force against Spikes, summary judgment is granted to Lt. Lockett.

### C. Qualified Immunity

Lt. Lockett is entitled to qualified immunity and to be dismissed from the case. Qualified immunity provides "complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir.2002) (citation and quotations omitted). There is a two-part test to determine whether a defendant is entitled to qualified immunity. First, a court asks "whether [the] plaintiff's allegations, if true, establish a constitutional violation." Id. (citation omitted). Second, a court asks "whether the right was clearly established." Id. (citations omitted).

Spikes has not created a genuine issue of material fact as to whether Lt. Lockett violated the Eighth Amendment. As a result, he fails the first part of the qualified immunity test. Lt. Lockett is therefore entitled to qualified immunity and is dismissed from this case.

**SO ORDERED**, this the 3rd day of August, 2010.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

lmc